Pennypack Woods Home Ownership Association, Appellant *v.* Paul Dahlberg, Appellee.

Argued October 5, 1979, before Judges Rogers, Blatt and Craig, sitting as a panel of three.

*Edward I. Swichar,* with him *Wexler, Weisman, Maurer & Forman, P.C.,* for appellant.

*David C. Harrison,* for appellee.

Opinion by Judge Rogers, November 21, 1979:

This is the appeal of Pennypack Woods Home Ownership Association (Association) from a final judgment entered against it in the Court of Common Pleas of Philadelphia County after trial before a judge without a jury of the Association's suit in ejectment against the appellee, Paul Dahlberg. The Association is a nonprofit corporation which owns a housing development in Northeast Philadelphia. The development was constructed by the United States of America as defense housing pursuant to the Lanham Act, 42 U.S.C.A. §1521 et seq. Paul Dahlberg was a member of the Association and as such he and his family were entitled to occupy one of the dwelling units at the low monthly charge of $139. The Association

has purported to revoke Dahlberg's membership with the effect of terminating his right to occupy a unit in the development.

This litigation has been protracted. In July 1973 the Association assertedly revoked Dahlberg's Home Security Policy and thus his right to occupy his unit; in January 1974 the Association brought this suit in ejectment; in October 1975 summary judgment for the Association was entered in the Court of Common Pleas; in October 1976 the Commonwealth Court affirmed this judgment per curiam; and in February 1976 the Pennsylvania Supreme Court per curiam vacated the Commonwealth Court order and remanded the case to the court of common pleas "to be heard on the merits". The case was tried on the merits in January 1978 and the final order entered in September 1978. The summary judgment entered below and vacated by the Pennsylvania Supreme Court was founded on the Association's assertion that Dahlberg was not entitled to judicial relief because he had failed to exhaust his remedies provided in the By-Laws of the Association by not appealing from the Board of Directors' action revoking his membership to the Association's general membership. At the trial, the able judge presiding considered the Association's renewed contention that Dahlberg had failed to exhaust his By-Law remedies and rejected it because the procedures by which the Board of the Association purported to revoke Dahlberg's membership had, in her opinion, denied Dahlberg's procedural due process rights and, in addition, constituted violations of By-Laws provisions.

The Association on the occasion of this appeal again raises the issue of Dalhberg's asserted failure to exhaust his By-Law remedies. This contention is clearly now ineffective. First, the Pennsylvania Supreme Court's remand for a trial on the merits seems

to be an implicit rejection of the Association's position. Second, we are satisfied from our own examination of the record that the Association's failure to conform to the By-Law procedures in revoking Dahlberg's membership robbed that action of any effectiveness.

The Association devotes much of its brief and argument in this appeal in contesting the trial judge's conclusion that Dahlberg had procedural due process rights. While we are inclined to agree with the learned trial judge that the connection of the Association with the United States and other circumstances provided a valid basis for the assertion of such rights, our examination of the record convinces us that the Board of Directors so deviated from the By-Laws that it cannot prevail in this action, regardless of constitutional considerations.

In 1972, when the first event leading to this litigation occurred, the Dahlberg household consisted of him, his wife and several children. At that time Section 8 of Article V of the By-Laws of the Association provided pertinently as follows:

Upon the written petition of any member of the corporation . . . alleging that a member . . . has been guilty of conduct detrimental to the corporation, the Board of Directors . . . shall . . . make a formal complaint of the charges against such a member, and he may in writing within 30 days demand a hearing . . . . The Board shall hold a hearing within 30 days after receiving such request and if by a two-thirds vote of all the Board members the complaint is found justified, the complained of member shall be deprived of any and all rights. The member in question . . . may appeal the decision of the Board . . . [to the membership]. A two-thirds vote of the membership present will be neces-

sary to override the decision of the board . . . .

On October 16, 1972, the Board of Directors wrote to Mr. Dahlberg as follows:

Dear Mr. Dahlberg:

In line with the By-Laws, the Board of Directors is filing formal charges against you for the action of your sons, William and Andy on Saturday morning, September 30th, 1972 at approximately 1:45 A.M. wherein they attacked the Security Guards hired by Pennypack Woods Home Ownership Association in the normal execution of their duties.

Under the By-Laws you have thirty days in which to demand a hearing on the above charges, this must be in writing and addressed to the Secretary of the corporation.

If you do not demand a hearing, then the Board will render a decision on the matter at their next Board meeting following the prescribed time limit.

No written petition of any member of the Association alleging offending conduct preceded this complaint. Both before and after October 16, 1972, the matter of the Dahlberg children's behavior was discussed at Board meetings. Mr. and Mrs. Dahlberg attended one such meeting on December 28, 1972 and another on March 27, 1973. At the March 27, 1973 meeting after the Dahlbergs left it was "suggested" that Dahlberg's Home Security Policy should be suspended for not less than three months or more than six months. Action was deferred until April 10, 1973, apparently to obtain a quorum, and on the latter date Dahlberg's Home Security Policy was voted to be suspended for not less than three months or more than six months and Dahlberg ordered to pay $166 per month instead of $139 for his accommodations. Dahlberg continued to pay the $139 charge.

Dalhberg's failure to pay the higher charges and one of his son's recent conduct were matters discussed at a meeting of the Board of Directors on May 22, 1973. On July 31, 1973, the Chairman of the Board advised the meeting that Dahlberg had paid only the member charges and that "other incidents [had] taken place". The Board thereupon voted to revoke Dahlberg's Home Security Policy and instructed its counsel to take appropriate action. The Dahlbergs were not present at the May 22, 1973 or July 31, 1973 meetings and had no notice that any action would be taken at the July 31, 1973 meeting, much less that he would be stripped of his membership.

No petition of a member alleging detrimental conduct on the part of any Dahlberg was ever made; the only formal complaint of the charges against Dahlberg was that based on an incident involving his sons on September 30, 1972; no formal complaint was ever made with respect to any conduct of Dahlberg's sons occurring after September 30, 1972; and no complaint was ever made concerning Dahlberg's failure to pay $166 instead of $139 for the use of his unit during the suspension of his Home Security Policy. Section 8 of Article V of the By-Laws in existence when these events occurred required a petition of a member, a formal complaint, notice, and the opportunity to attend a Board hearing to perfect an action affecting the member's rights. Some of these requirements were observed with respect to the suspension based on the September 30, 1972 incident involving the sons; none were observed with respect to the revocation based on other matters. Since it is the latter which was the foundation of the suit in ejectment, judgment for Dahlberg was clearly indicated.

During the course of the case, Mr. and Mrs. Dahlberg separated. Their sons, whose conduct in September 1972 was the cause of the litigation, lived with

386

neither of them when the case was argued. Mr. Dahlberg has assigned his membership interest to Mrs. Dahlberg who wants to live in the unit. At argument we asked whether time had not effected a solution to this burdensome proceeding tolerable, if not wholly satisfactory, to the Association. The response of counsel was that the Association's primary remaining concern was that a precedent might be established for seeking judicial relief without observing By-Law procedures for hearing and disposing of such matters within the Association. We may hope that this concern is met by our affirmance of the judgment below based on the Board of Directors' failure to observe the same By-Law.

Order affirmed.

ORDER

AND Now, this 21st day of November, 1979, the final order of the Court of Common Pleas of Philadelphia County, dated September 28, 1979, is affirmed.